UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OLGA SORENSEN, et al.

    Plaintiffs,

v.

TARGET CORPORATION,

    Defendant.

Case No.  12-cv-04025-JCS

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 37

## I. INTRODUCTION

On July 22, 2010, Olga Sorenson ("Mrs. Sorenson"), James Sorenson ("Mr. Sorenson") (together, "Plaintiffs"), and their granddaughter Selina Sorenson ("Selina") were shopping at one of Target Corporation's ("Target") stores in San Mateo, California when Mrs. Sorenson slipped and fell on a substance on the floor. Mrs. Sorenson brings an action for negligence and Mr. Sorenson brings an action for loss of consortium. *See* Def.'s Mot. for Summ. J. ("Mot.") Ex. B at 4–5 (Pl.'s First Am. Compl.) ("FAC"). Presently before the Court is Target's Motion for Summary Judgment ("Motion"). The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing on the Motion was held on Friday, December 6, 2013 at 9:30 a.m. For the reasons explained below, the Court DENIES Target's Motion.

## II. BACKGROUND

### A. Factual Background

Pursuant to the Court's Standing Orders, the parties submitted a Joint Statement of Undisputed Material Fact Re: Defendants' Motion for Summary Judgment ("JSUF"). *See* Dkt. No. 42. Unless otherwise noted, the parties agree to the following facts:

On July 22, 2010, Plaintiffs and Selina went to the Bridgepoint Target Store located in San

Mateo to shop for snacks, shampoo, and lotion. JSUF ¶ 1. After entering the store together, Mr. Sorensen left the group and went to shop in the Electronics Department. *Id.* ¶ 2. Mrs. Sorensen and Selina entered an aisle in the Health, Beauty and Accessories Department. *See id.* ¶ 4.

Mrs. Sorensen alleges that she was injured when "she slipped on a substance on the floor of the shopping area and fell." *Id.* ¶ 5. Neither Mrs. Sorensen nor Selina observed the spill before the fall. *Id.* ¶ 14. Mrs. Sorensen saw no one else slip or slide in the aisle before she fell. *Id.* ¶ 9. Her husband did not observe the accident nor was he in the aisle before she fell. *Id.* ¶ 3.

After the incident, Selina observed a broken jar on a shelf and a spill of a substance on the floor. *Id.* ¶ 12. However, she did not see any substance dripping off the broken jar onto the shelf and onto the floor. *Id.* Selina also saw the spill on Mrs. Sorenson's pants, shoes, and either side of her buttocks. *Id.* ¶ 15. Dolly Alvarez ("Alvarez"), a Target employee at that time, observed the broken jar on the shelf after the incident and she, like Selina, did not observe the contents of the broken jar dripping from the shelf. *Id.* ¶ 13. Shirley Marshall ("Marshall"), another Target employee, testifies that when she responded to the incident, she observed that the spill did not appear dirty or dried. Decl. of Shirley Marshall in Supp. of Mot. ¶ 7 ("Marshall Decl."). Plaintiffs do not know how long the substance had been on the floor that caused Mrs. Sorenson to slip and fall. JSUF ¶ 10.

The parties appear to agree that the substance was white in color, and the floor was white or white with brown speckles. *See* Decl. of Karen Neri in Supp. of Pls.' Opp'n to Mot. ("Neri Decl.") Ex. 7 at 78:25–79:7 (Dep. of Selina) (testifying that both substance and floor were white); Decl. of Gail Trabish in Supp. of Def.'s Reply to Pls.' Opp'n to Mot. ("Trabish Decl. in Supp. of Reply") Ex. J at 88:6–15 (Dep. of Alvarez) (testifying that substance was white and floor was white with brown speckles). *See also* Decl. of Jeffrey Winters in Supp. of Mot. ("Winters Decl.") Ex. I (color photograph of aisle showing that floor was white or similar light color).

The aisle where Mrs. Sorenson fell had partial surveillance video coverage. JSUF ¶ 6. *See* Target's Surveillance CD of Footage of Incident dated July 22, 2010 ("Surveillance Video"); Dkt. No. 45 (Notice of Lodgment of Surveillance Video). The video captures movement in and around one end of the aisle (the refrigerated cooler end). JSUF ¶ 7. However, the other end of the aisle

1 and Mrs. Sorenson's fall itself were not captured on the video. *Id.*

2 The video shows Mrs. Sorensen and Selina entering the subject aisle from the refrigerated
3 cooler end at 12:39:45 p.m. *Id.* ¶ 6. The video also shows Selina twice lifting the lid of a shampoo
4 bottle to smell the product. *Id.* ¶ 8. Mrs. Sorensen did not observe Selina opening bottles. *Id.* Mrs.
5 Sorenson and Selina are then seen walking further down the aisle, exiting the video screen around
6 12:41:05 p.m. *See* Decl. of Gail Trabish in Supp. of Mot. ("Trabish Decl. in Supp. of Mot.") Ex. E
7 at 46:9–12 (Dep. of Selina). Based on the movements of people in the surveillance video,
8 Plaintiff's fall is believed to have occurred by 12:41:15 p.m. JSUF ¶ 16.

9 The video shows that prior to Mrs. Sorenson's fall, several Target employees walked by or
10 through the subject aisle. First, Marshall and Jeffrey Winters ("Winters"), walked through the aisle
11 at 12:21:42 p.m. and 12:24:54 p.m., respectively. *Id.* ¶ 17. They state that they were performing
12 inspections as they walked through the aisle, and they did not see any spills. *Id.*; Winters Decl. ¶ 8;
13 Marshall Decl. ¶ 8. Second, Alvarez walked through the aisle perpendicular to the subject aisle
14 around 12:21:18 p.m., and she walked through the subject aisle itself at 12:24:55 p.m. JSUF ¶ 18.
15 Alvarez states that she did not inspect the floor at those times and that she did not see the spill
16 before the incident. *Id.*; Neri Decl. Ex. 6 at 20:11–23:13 (Dep. of Alvarez); Decl. of Alvarez in
17 Supp. of Mot. ¶ 9 ("Alvarez Decl."). Third, Elmer Sandoval ("Sandoval") looked into the aisle at
18 12:38:12 p.m., and he states that he was inspecting the floor and did not observe a spill. JSUF
19 ¶ 19; Decl. of Sandoval in Supp. of Mot. ¶ 5 ("Sandoval Decl."). The surveillance video also
20 shows that in the approximately three minutes prior to the fall, at least eight customers, some of
21 which were children—not including Mrs. Sorensen and Selina—entered the aisle where the
22 incident occurred. *Id.* ¶ 20.

23 Target explains that it has a policy for maintaining the safety of its store. Before opening
24 the store to the public each day, the floors are cleaned by an outside janitorial service. Mot. at 5.
25 Before the store is opened and before the janitorial service leaves, the work of the janitorial
26 service is inspected. *Id.* This includes making sure that the floors are clean and dry. *Id.* While the
27 store is open to the public, all Target employees are instructed to inspect and monitor the premises
28 on a constant and ongoing basis in the course of their duties. *See id. See also* Neri Decl. Ex. 3 at 4

3

(Def.'s Resp. to Pls.' Req. for Admis., Set Two) (admitting that "Target employees must make reasonable inspections of the store aisles to discover unsafe conditions for customers").

As it relates to spills, Target has a printed Spill Clean Up Procedure, as well as a DVD showing how to clean up a spill. JSUF ¶ 11. If a dangerous condition is observed, employees are instructed to either correct it or to call someone to correct it. Mot. at 5. Employees are trained to be aware of their surroundings and to make safety a priority over other duties. Mot. at 5. *See also* Trabish Decl. in Supp. of Mot. Ex. G at 16:8–18:4 (Dep. of Sandoval) (describing Target policy regarding safety). Training occurs during each employee's initial orientation, and it is reinforced through ongoing training "huddles" that occur every day in the store. Mot. at 5. *See also* Trabish Decl. in Supp. of Mot. Ex. H at 71:9–76:7, 92:21–93:12 (Dep. of Alvarez) (describing training). Training includes "Five Do's and Don'ts," and the first "Do" is "Do clean up all spills or clutter on the floor." *Id.* at 5 (citing Winters Decl. ¶ 3; Sandoval Decl. ¶ 3).

### B. Procedural Background

Plaintiffs allege negligence and loss of consortium. *See* FAC at 4–5. Target moves for summary judgment, arguing that (1) Plaintiffs have not presented any evidence that Target had actual or constructive notice of a dangerous condition prior to Mrs. Sorenson's fall, and (2) because Plaintiffs have failed to provide evidence of Target's negligence, Mr. Sorenson's claim for loss of consortium must also fail. *See* Mot. at 9–13.

Plaintiffs oppose the Motion, arguing that (1) they can demonstrate Target had constructive notice based on an inference arising from a failure to reasonably inspect within a period of time, and (2) Mr. Sorenson's loss of consortium claim is actionable because he has alleged that Mrs. Sorenson suffered tortious injury. *See* Pls.' Opp'n to Mot. at 5–12, 14–16 ("Opp'n"). Plaintiffs also make several evidentiary objections. *Id.* at 6, 12–14.

Defendants reply that (1) the applicable standard is reasonable care, not strict liability; (2) Plaintiffs have the burden of proof on actual notice; (3) Plaintiffs fail to meet their burden on constructive notice; and (4) the existence of questions of fact regarding causation and damages do not preclude granting summary judgment. *See generally* Def.'s Reply to Opp'n ("Reply"). Defendants also make several evidentiary objections. *Id.* at 4, 5, 7, 9. Plaintiffs object to evidence

4

attached to Target's Reply. *See generally* Pls.' Objection to Reply Evid.

Although the parties address several issues in the briefs, their primary disagreement relates to whether the actions of Target employees seen in the surveillance video constituted reasonable inspections of the aisle in which Mrs. Sorenson fell. *See* Mot. at 10; Opp'n at 3; Reply at 5.

## III. EVIDENTIARY RULINGS

In ruling on a motion for summary judgment, the Court may only consider evidence that is admissible. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Rule 56(c) of the Federal Rules of Civil Procedure allows parties to object to evidence cited to support or dispute a fact. Here, both parties have made evidentiary objections. *See* Opp'n at 6, 12–14; Reply at 4, 5 n.1, 7, 9. To the extent that certain facts or evidence are not mentioned in this Order, the Court has not relied on them in reaching its decision. And to the extent that certain facts or evidence to which Plaintiffs have objected are mentioned in this Order, the Court notes that it has not ruled on such evidence, but that even if it considered such evidence, it would not change its decision below.[1]

## IV. LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id.* On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

---

[1] This Order does not rely on any facts or evidence objected to by Target.

5

## V. ANALYSIS

### A. California Premises Liability Law

Premises liability is a type of negligence. To establish negligence under California law, Plaintiff must show: (1) a legal duty to use due care; (2) a breach of that duty; and (3) the breach as the proximate or legal cause of the resulting injury. *Eidem v. Target Corp.*, EDCV 10-01000 VAP, 2011 WL 3756144, at *6 (C.D. Cal. Aug. 24, 2011) (citing *Jackson v. Ryder Truck Rental, Inc.*, 16 Cal. App. 4th 1830, 1837 (1993); 6 Witkin, Summary of Cal. Law: Torts § 732 (9th ed. 1988); *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1250, (2009)).

As to the element of duty, "[i]t is well established in California that although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." *Navarro v. Target Corp.*, 2:11-CV-00041-GEB, 2012 WL 2873496, at *2 (E.D. Cal. July 11, 2012) (quoting *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001)). A store owner exercises reasonable care by "making reasonable inspections of the portions of the premises open to customers." *Eidem*, 2011 WL 3756144, at *6 (quoting *Ortega*, 26 Cal. 4th at 1205; *Bridgman v. Safeway Stores, Inc.*, 53 Cal. 2d 443, 448 (1960)).

What constitutes reasonable care in a given situation depends on the circumstances, and it "is commensurate with the risks involved." *Eidem*, 2011 WL 3756144, at *6 (quoting *Ortega*, 26 Cal. 4th at 1205; *Bridgman*, 53 Cal. 2d at 448). For example, in a self-service grocery store where customers may remove merchandise from the shelves, the store owner may need to "take greater precautions and make more frequent inspections" to protect against dangerous conditions. *Eidem*, 2011 WL 3756144, at *6 (citing *Ortega*, 26 Cal. 4th at 1205).

As to the elements of causation and breach, "the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability." *See Eidem*, 2011 WL 3756144, at *6 (citing *Ortega*, 26 Cal. 4th at 1205). The plaintiff has the burden of proving this knowledge. *Eidem*, 2011 WL 3756144, at *6 (citing *Ortega*, 26 Cal. 4th at 1205) (plaintiff has burden of proving all elements of negligence); *Navarro*, 2012 WL 2873496, at *2 (quoting *Ortega*, 26 Cal. 4th at 1206) ("[W]here the plaintiff relies on the failure to correct a dangerous condition to prove the owner's negligence, the plaintiff has the burden of showing that the owner had notice of the

defect in sufficient time to correct it."); *Moore v. Wal-Mart Stores, Inc.*, 111 Cal. App. 4th 472, 478–79 (2003) (citing *Ortega*, 26 Cal. 4th 1200) (rejecting "mode of operation" rule that allowed plaintiff to bring negligence claim without proof of notice).

A plaintiff can show constructive notice by introducing circumstantial evidence. *Eidem*, 2011 WL 3756144, at *6 (citing *Ortega*, 26 Cal. 4th at 1210; *Bridgman*, 53 Cal. 2d at 447). Specifically, a plaintiff can present "evidence that an inspection had not been made within a particular period of time prior to an accident," which "may warrant an inference that the defective condition existed long enough a person exercising reasonable care would have discovered it." *Eidem*, 2011 WL 3756144, at *6 (quoting *Ortega*, 26 Cal. 4th at 1210; *Bridgman*, 53 Cal. 2d at 447). Such an inference can be supported by evidence that a defendant's inspections were not reasonable. *See Navarro*, 2012 WL 2873496, at *4 (denying summary judgment where plaintiff presented evidence that inspections were not reasonably carried out); *Pineda v. Target Corp.*, SACV 08-0315 AG RNBX, 2009 WL 3244995, at *4 (C.D. Cal. Oct. 5, 2009) (same). Where a plaintiff relies on a particular period of time having passed without an inspection to support a claim of negligence, she must provide some evidence on the issue of inspection—if she does not provide any evidence on this issue, the court should grant summary judgment for the defendant. *See Eidem*, 2011 WL 3756144, at *9.

If a plaintiff presents evidence that a reasonable inspection was not made within a particular period of time, then the question of "[w]hether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury, and the cases do not impose exact time limitations." *See Navarro*, 2012 WL 2873496, at *3 (quoting *Ortega*, 26 Cal. 4th at 1207). However, courts have granted summary judgment for defendants where it is undisputed that an inspection occurred just minutes before the accident. *See, e.g.*, *Lively v. Wild Oats Markets*, CV 04-117-RGK RCX, 2006 WL 5085248 (C.D. Cal. Nov. 3, 2006) (granting summary judgment where inspection had occurred five minutes prior to accident and plaintiff had not provided other evidence regarding inspection).

### B. Negligence

Target argues that it is entitled to summary judgment because Plaintiffs cannot prove that

Target had actual or constructive notice of the spill. *See* Mot. 9–12; Reply at 3–8. Plaintiffs respond that they have presented evidence sufficient to create a genuine issue of material fact regarding whether the spill existed for long enough such that a reasonable store owner would have discovered it. *See* Opp'n at 7–12.[2]

Target argues that the following evidence demonstrates that there is no genuine issue of material fact as to constructive notice: (1) Plaintiffs cannot say how long the condition existed, Mot. at 9–10; (2) various employees—Alvarez, Marshall, Winters, and Sandoval—walked by or through the aisle where Mrs. Sorenson fell, and they did not see any spills before the incident, Mot. at 10–11; Reply at 4–8 (citing Surveillance Video at 12:21:18 p.m., 12:21:42 p.m., 12:24:54 p.m., 12:24:55 p.m., 12:38:12 p.m.); (3) in the approximately three minutes before the incident, at least eight customers besides Mrs. Sorenson and Selina walked into the aisle, and any one of them could have created the spill, Mot. at 10; (4) there is no evidence as to how long the jar or bottle observed on the shelf after the incident had been broken, *id.* at 12; *see also* Reply at 8 (citing Trabish Decl. in Supp. of Mot. Ex. H at 33:13–34:13 (Dep. of Alvarez)) (arguing that testimony that substance was not dripping from shelf supports inference that spill was new); *Perez v. Ow*, 200 Cal. App. 2d 559, 560–61 (1962) (reasoning that lack of testimony that ice cream upon which plaintiff slipped was melted at time of her fall supported inference that spill was new). As to this last point, Target argues that because the supposedly viscous substance was not dripping at the time of Mrs. Sorenson's fall, it supports an inference that there had not been enough time for it to start dripping. *See* Reply at 8 ("The inference of course is that the spill was created when the product was dropped on the floor and then placed on the shelf.").

Plaintiffs' opposition focuses on whether the activities of the Target employees shown in the surveillance video constituted reasonable inspections. Plaintiffs argue that the video reveals no "obvious displays of inspections occurring, or any outward expression of intent on the part of the[] employees to reasonably inspect the aisle or to clean the aisle" prior to Mrs. Sorenson's fall.

---

[2] As to actual notice, Plaintiffs do not meaningfully advance this argument. They devote only one paragraph to this issue in their opposition, and they do not provide any evidence that would support a finding of actual notice. *See* Opp'n at 6. Accordingly, Plaintiffs cannot prevail on this theory. *See also* Reply at 3–4 (correctly stating that Plaintiffs have burden of proving actual notice).

Opp'n at 9. Plaintiffs argue it is possible that employees "had not observed the spill because they did not actually inspect the aisle." *Id.* at 11. Alvarez also testifies that at each of the times where she appears in surveillance video—12:21:18–12:21:30 p.m. and 12:24:33–12:24:58 p.m.—she was not inspecting the aisle where incident occurred. Neri Decl. Ex. 6 at 20:11–23:13 (Dep. of Alvarez); Alvarez Decl. ¶ 9 (same). Finally, Plaintiffs assert that the spill would have been hard to see from the refrigerated cooler end of the subject aisle because the substance and the floor were both white—thus, a reasonable inspection to detect the substance would have required, at the least, walking through the aisle and not just looking down it from one end. *See* Opp'n at 10 (citing Neri Decl. Ex. 7 at 78:25–79:7 (Dep. of Selina)) (some citations omitted). *See also Pineda v. Target Corp.*, SACV 08-0315 AG RNBX, 2009 WL 3244995, at *4 (C.D. Cal. Oct. 5, 2009) (in denying summary judgment on whether substance upon which plaintiff slipped and fell was an "open and obvious condition," admitting evidence that substance was a "clear, white, transparent liquid" and that every morning floors were purposefully buffed to have shiny look).

In response, Target argues that "one does not need to look straight down to see the ground." Reply at 6. Target also argues that although Alvarez testifies to have not inspected the ground before the fall but to have inspected the ground after the fall, she does not appear to be doing anything differently in the surveillance video. *Id.* (citing Alvarez Decl. ¶ 9; Trabish Decl. in Supp. of Reply Ex. J at 30:17–31:9 (Dep. of Alvarez)). Target also appears to challenge Plaintiffs' inference that the spill would have been hard to see because Alvarez testified that the floor was "white with brown speckles" rather than pure white. *See* Reply at 7 (citing Trabish Decl. in Supp. of Reply Ex. J at 88:6–15 (Dep. of Alvarez).

### 1. Whether Target's inspections were reasonable

The parties do not agree as to whether the actions of Target employees in and near the aisle where the incident occurred constituted reasonable inspections such that Target had constructive notice of the spill. Because both parties have presented evidence on this issue, there is a genuine question of fact regarding whether the inspections were reasonable.

On the one hand, a jury could believe the declarations of Target employees Marshall, Winters, and Sandoval, which stated that when they had walked by or through the subject aisle on

9

the day of the incident as depicted in the surveillance video, they had been scanning the ground for dangerous conditions and performing inspections. The jury could disbelieve Alvarez's testimony that she failed to conduct inspections before the incident but she conducted inspections after the incident, based on Target's argument that her actions appeared to be indistinguishable on the surveillance video. The jury could also credit Target's inference that the spill had been created only a short time before the fall because it was not dripping from the shelf onto the floor, nor was it dirty or dried. Specifically, the jury could agree with Target's assertion that because the substance was not dripping off the shelf, the spill was created when the product was dropped on the floor and then placed back on the shelf, just a short time before Mrs. Sorenson's fall.

Under these circumstances, the jury could determine that the last inspection occurred as late as 12:40:10 p.m. when Sandoval walked down the aisle perpendicular to the aisle where the incident occurred. The jury could find that, as a result, Target exercised reasonable care because an inspection occurred less than two minutes before Mrs. Sorenson's fall. *See, e.g.*, *Lively*, 2006 WL 5085248 (granting summary judgment where it was uncontroverted that inspection had occurred five minutes prior to accident).

On the other hand, a jury could disbelieve the Target employees' declarations based on the surveillance video evidence. The jury could decide that one or more of the employees' appearances on the video did not show a reasonable inspection.[3] The jury could also credit Plaintiffs' inference that the spilled substance was hard to see from the refrigerated cooler end of the aisle because it was white and blended in with the color of the floor and thus, for an inspection to be reasonable, it would have required more deliberate actions, such as walking through the aisle or purposefully inspecting the ground.

Under these circumstances, the jury could determine that no inspection occurred since at least 12:19:55 p.m. when the video begins. Alternatively, the jury could determine that no inspection occurred since at least 12:24:59 p.m., which was the last time an employee—

---

[3] Furthermore, if the jury finds that employees were violating Target's policies to constantly perform inspections, this could provide additional evidence of a breach. *See* Opp'n at 7 (citing *Sapp v. W. T. Grant Co.*, 172 Cal. App. 2d 89, 91–93 (Cal. Ct. App. 1959) (citing of *Powell v. Pac. Elec. Ry. Co.*, 35 Cal. 2d 40, 46–47 (1950)).

1 Sandoval—walked through the subject aisle itself, rather than walking through the perpendicular
2 aisle. The jury could find that, as a result, Target failed to exercise reasonable care because an
3 inspection had not occurred for at least twenty-one minutes or sixteen minutes. *See, e.g.*, *Ortega*,
4 26 Cal. 4th at 1204, 1213 (affirming jury verdict for plaintiff where evidence showed that no
5 inspection had occurred for at least fifteen to thirty minutes); *Navarro*, 2012 WL 2873496, at *4
6 (denying summary judgment where employee testified that he had walked past area ten minutes
7 prior to accident but question remained as to whether this constituted reasonable inspection;
8 admitting evidence questioning adequacy of defendant's inspection practices); *Pineda*, 2009 WL
9 3244995, at *4 (denying summary judgment where evidence showed that inspection had not been
10 made between thirty and fifty minutes before accident and question remained as to whether
11 employee's walk through aisle perpendicular to aisle where accident occurred constituted
12 reasonable inspection; reasoning that "jury could conclude that the employee's inspection was not
13 reasonable because he did not go down individual aisles").

14 The parties also disagree about whether the absence of sweep logs provides evidence of a
15 lack of inspection for a particular period of time. Plaintiffs argue that the absence of sweep logs is
16 helpful to their case. *See* Opp'n at 8. They cite *Ortega*, wherein the absence of sweep logs—
17 together with an employee's testimony that the area where a plaintiff slipped on a puddle of milk
18 had not been inspected for at least fifteen to twenty minutes and up to two hours—was sufficient
19 to create a question of fact appropriate for a jury. *See id.* (citing *Ortega*, 26 Cal. 4th 1200).
20 Defendants argue that sweep logs are not required for a store owner to meet their duty of care and
21 that in any event, the surveillance video shows much more detail than sweep logs might. *See*
22 Reply at 6–7. The Court notes that absence of sweep logs alone might be insufficient to create a
23 genuine factual dispute. *See Eidem*, 2011 WL 3756144 (granting summary judgment for defendant
24 where plaintiff proffered no evidence regarding inspections and defendant did not keep sweep
25 logs). However, the jury here can still take this circumstantial evidence into account when making
26 their factual findings.

27 Target also cites *Eidem*, which granted summary judgment for the defendant in a slip and
28 fall case. Mot. at 10 (citing *Eidem*, 2011 WL 3756144). However, *Eidem* is distinguishable

because there, the plaintiff provided no evidence regarding inspections whatsoever. *See Eidem*, 2011 WL 3756144, at *9. The court reasoned that even if the jury disbelieved defendant's testimony, the plaintiff had presented no other evidence upon which the jury could base a contrary decision. *See id.* Here, Plaintiffs have proffered at least three pieces of evidence: (1) the surveillance video; (2) Alvarez's testimony that she was not performing inspections at the times that she appeared in the surveillance video; and (3) evidence that the spilled substance was a similar color to the ground. *See* Surveillance Video; Neri Decl. Ex. 6 at 20:11–23:13 (Dep. of Alvarez); Alvarez Decl. ¶ 9; Selina Dep. at 78:25–79:7; Winters Decl. Ex. I. As discussed above, the jury could examine this evidence and decide that one or more of the employees' actions did not constitute a reasonable inspection and therefore the spill existed for a particular period of time such that a reasonable store owner would have discovered it.

### 2. Whether amount of time that passed without inspection was reasonable

Drawing all factual inferences in favor of Plaintiffs, Target did not perform a reasonable inspection for at least twenty-one minutes before Mrs. Sorenson's fall. *See* Surveillance Video (beginning at 12:19:55 p.m.). Whether twenty-one minutes is a reasonable amount of time for Target to not conduct a reasonable inspection is a question for a jury. *See Navarro*, 2012 WL 2873496, at *3 (quoting *Ortega*, 26 Cal. 4th at 1207).

### C. Loss of Consortium

In California, a claim for loss of consortium has four elements: "(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss was proximately caused by the defendant's act." *LeFiell Mfg. Co. v. Superior Ct.*, 55 Cal. 4th 275, 284–85 (2012) (quoting *Hahn v. Mirda*, 147 Cal. App. 4th 740, 746 n.2 (2007); 4 Levy et al., Cal. Torts, Loss of Consortium § 56.02[2] (2006)). "A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse." *LeFiell*, 55 Cal. 4th at 284–85 (quoting *Hahn*, 147 Cal. App. 4th at 746).

As discussed above, the Court denies summary judgment on Mrs. Sorenson's claim because genuine issues of fact remain as to whether Target employees performed reasonable

inspections in the time period preceding Mrs. Sorenson's fall. If Mrs. Sorenson's negligence claim prevails and she is found to have incurred injuries that have in turn injured Mr. Sorenson, the jury could find for Mr. Sorenson on the loss of consortium claim. Accordingly, the Court denies summary judgment as to this claim.

## VI. CONCLUSION

As to the negligence claim, Plaintiffs have presented evidence that creates a genuine issue of material fact as to whether Target's inspections were reasonable and whether the time period that passed without an inspection before Mrs. Sorenson's fall was reasonable. It follows that questions of fact also remain as to the loss of consortium claim. Accordingly, the Court DENIES Target's Motion.

**IT IS SO ORDERED**.

Dated: December 10, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge